Randall S. Leff (SBN 77148)
rleff@ecjlaw.com
Russell M. Selmont (SBN 252522)
rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for PLAINTIFF JULIANA GRIFFO

ERVIN COHEN & JESSUP LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION (SANTA ANA)**

| | |
|---|---|
| JULIANA GRIFFO,<br>Plaintiff,<br>v.<br>OCULUS VR, INC. and PALMER LUCKEY,<br>Defendants. | Case No. 8:15-cv-01228-DFM<br>*Hon. Douglas F. McCormick*<br>**FIRST AMENDED COMPLAINT**<br>*Complaint Filed: 7/31/15* |

## FIRST AMENDED COMPLAINT

Plaintiff Juliana Griffo ("Griffo") complains against Defendants Oculus VR, Inc. ("Oculus") and Palmer Luckey ("Luckey") (collectively, "Defendants") as follows:

## PARTIES

1. Griffo is an individual residing in New Jersey.

2. Oculus is a Delaware corporation with its principal place of business in Irvine, California, and is the corporate successor of Oculus VR LLC, a California limited liability company.

3. On information and belief, Luckey is an individual who is the founder of Oculus and resides in Long Beach, California.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and (b) (the Copyright Act).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(d), and 1400(a).

## FACTS

6. As a student at the University of Southern California ("USC"), Griffo was enrolled as a graduate student in the Interactive Media Division ("IMD") in the USC School of Cinematic Arts. From 2009-2012, she worked extensively on virtual reality, culminating in "Shayd," a virtual reality game where the user immerses himself in a three-dimensional alien universe, replete with exotic landscapes and alien creatures.

7. On information and belief, during the same time period, Luckey worked at the Mixed Reality Lab ("MxR"), which was part of the IMD. Luckey spent his time developing a prototype for what would become defendant Oculus' flagship product, the "Oculus Rift." The Oculus Rift is a head mounted display that must be connected to a PC to enable the user to immerse himself in separately

created virtual reality environments.

8. Griffo and Luckey met at MxR and Luckey expressed interest in working with Griffo on Shayd. Griffo incorporated the head mounted display and tracking system developed at MxR to make Shayd compatible with Luckey's Oculus Rift prototype. Luckey had no involvement with the creation, development or programming of Shayd or the software used to connect Shayd to his head mounted display prototype. His participation on the project was strictly limited to developing the headset.

9. On information and belief, Griffo was the only IMD student working on both virtual reality gaming and head mounted display technology at the same time. Further on information and belief, at the times relevant to the lawsuit, Shayd was one of few, if not the only, virtual reality game compatible with the Oculus Rift. Furthermore, on information and belief, at the time, Shayd was the most immersive, interactive and advanced Oculus compatible virtual reality game in existence, such that it was uniquely situated to demonstrate the potential of the Rift.

10. Shortly after Griffo graduated, she was asked permission to let Luckey include Shayd in the background of a video he was making as part of a Kickstarter campaign ("Video") to raise funding for the Oculus Rift. In response, Griffo advised Luckey that she only would consider the request after first having the opportunity to review the Video. Luckey never provided Griffo with an opportunity to review his intended Video nor responded in any way. Instead, two days later, on August 1, 2012, Luckey uploaded his Video to Kickstarter and raised over 2.4 million dollars.

11. The Video prominently displays Shayd as a working example of how the Oculus Rift functions and brings 3-D images to the user. No other virtual reality games except for Shayd are used in conjunction with the Oculus Rift in the Video. Shayd's importance to the Video is undeniable, as Palmer declares himself the inventor of Rift right at the moment images of Shayd appear, in focus, directly

ERVIN COHEN & JESSUP LLP

behind him. Despite this fact, the Video makes no mention of the fact that Shayd was an independent project developed by Griffo. Thus, without contributing any work, labor, money or compensation to Griffo, Palmer passed images of Shayd off as his own creation to demonstrate the capabilities of Rift and get rich from it.

12. It is highly unlikely that Luckey could have incorporated these Shayd images into the Video in that short a time period (2 days) even had Griffo consented to the use of Shayd in the Video (she did not). Thus, on information and belief, Luckey had already been illegally incorporating and displaying Griffo's Shayd copyrighted game prior to seeking Griffo's consent.

13. Furthermore, the video contained numerous testimonials and endorsements from prominent video game developers, who state that they have used the Oculus Rift and experienced its groundbreaking virtual reality technology. On information and belief, when these developers demoed the Oculus Rift, they did so by using it in conjunction with Griffo's Shayd virtual reality game. Griffo never consented to the use of Shayd in the Video or elsewhere. Moreover, she never provided Luckey or anyone else with access to the version of Shayd that appears in the Video.

14. In an interview with Richard Leadbetter, published on August 4, 2012 (three days after the Kickstarter campaign commenced) Luckey stated "Shayd was actually shown in the Kickstarter video – experiencing that for the first time last year was what convinced me that I had to make this something people could see for themselves."

15. Despite the fact that Luckey used Shayd to highlight the innovation his hardware would bring to the gaming world, he never compensated Griffo in any way. Accordingly, Griffo brings this action seeking full and fair compensation for Defendants' unlawful use of her intellectual property.

/ / /

/ / /

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**FIRST CLAIM**

Copyright Infringement

*(Against Defendants)*

16. Griffo repeats and realleges each and every allegation set forth in paragraphs 1 through 15, above, as though fully set forth herein.

17. Griffo is the owner of copyrights in works that are fixed in tangible media of expression and that are the subject of valid and subsisting copyright registrations owned by Griffo. These include, without limitation, the works that are the subject of Registration TX 6-748-913 (the "Works").

18. Defendants have reproduced, created derivative works from, distributed, and otherwise infringed upon Griffo's protected Works without Griffo's authorization. Defendants' acts violate Griffo's exclusive rights under the Copyright Act, including without limitation, Griffo's exclusive rights to reproduce her copyrighted Works, to create derivative works from its copyrighted Works, and to distribute its copyrighted Works as set forth in 17 U.S.C. §§ 106 and 501.

19. Defendants' infringement (and substantial contributions to the infringement) of Griffo's copyrighted Works is and has been knowingly made without Griffo's consent and for commercial purposes and the direct financial benefit of Defendants. Griffo is informed and believes, and on that basis alleges, that Defendants have failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Griffo's Works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Griffo's Works. Accordingly, Defendants have engaged in direct, contributory and vicarious infringement of Griffo's Works.

20. By virtue of Defendants' infringing acts, Griffo is entitled to recover her actual damages plus Defendants' profits and all other relief, including statutory damages and attorneys' fees and costs, permitted under the Copyright Act.

/ / /

**SECOND CLAIM**

Unjust Enrichment

*(Against Defendants)*

21. Griffo repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth herein.

22. Griffo devoted significant time, money and resources into developing her Shayd virtual reality game.

23. Without Griffo's permission, Defendants willfully used Shayd to showcase their Oculus Rift technology, including prominently featuring Shayd in the Video, and, on information and belief, allowing numerous well-known developers in the video game industry to use the Oculus Rift to play Shayd.

24. On information and belief, the Video featuring Shayd and the endorsements that were based on the use of Shayd were the impetus for Defendants' raising over $2 million through the Kickstarter campaign, which eventually led to Facebook purchasing Oculus for over $2 billion. To date, Defendants have not paid Griffo anything for their unauthorized use of Shayd.

25. By reason of the foregoing, Griffo seeks restitution from Defendants and order from this Court disgorging all revenue, benefits and other compensation wrongfully obtained by Defendants by their improper conduct.

**DEMAND FOR JURY TRIAL**

Griffo hereby demands a trial by a jury on all issues so triable by right.

**PRAYER FOR RELIEF**

By reason of the acts and circumstances alleged above, Griffo seeks relief from this Court as follows:

1. That Griffo be awarded, and Defendants be ordered to disgorge, all payments, revenue, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including without limitation of all revenues and profits attributable to Defendants' infringements of Griffo's copyrights

ERVIN COHEN & JESSUP LLP

under 17 U.S.C. §504;

2. That Defendants be ordered to pay exemplary damages in a sum sufficient to punish and make an example of them, and deter them and others from similar wrongdoing;

3. That Defendants pay to Griffo the full cost of this action and her attorneys' fees

4. Any other and further relief as this Court may deem just and proper.

DATED: November 2, 2015

ERVIN COHEN & JESSUP LLP
Randall S. Leff
Russell M. Selmont

By: /s/ Randall S. Leff
Randall S. Leff
Attorneys for PLAINTIFF JULIANA GRIFFO

ERVIN COHEN & JESSUP LLP