Randall S. Leff (SBN 77148)
rleff@ecjlaw.com
Russell M. Selmont (SBN 252522)
rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for PLAINTIFF JULIANA GRIFFO

ERVIN COHEN & JESSUP LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION (SANTA ANA)**

| | |
|---|---|
| JULIANA GRIFFO,<br><br>Plaintiff,<br><br>v.<br><br>OCULUS VR, INC. and PALMER LUCKEY,<br><br>Defendants. | Case No. 8:15-cv-01228-DFM<br><br>*Hon. Douglas F. McCormick*<br><br>**SECOND AMENDED COMPLAINT**<br><br>*Complaint Filed: 7/31/15* |

Plaintiff Juliana Griffo ("Griffo") complains against Defendants Oculus VR, Inc. ("Oculus") and Palmer Luckey ("Luckey") (collectively, "Defendants") as follows:

## PARTIES

1. Griffo is an individual residing in New Jersey.

2. Oculus is a Delaware corporation with its principal place of business in Irvine, California, and is the corporate successor of Oculus VR LLC, a California limited liability company.

3. On information and belief, Luckey is an individual who is the founder of Oculus and resides in Long Beach, California.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and (b) (the Copyright Act) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(d), and 1400(a).

## FACTS

6. As a graduate student at the University of Southern California ("USC"), Griffo was enrolled in the Interactive Media Division ("IMD") in the USC School of Cinematic Arts. From 2009-2012, she worked extensively on virtual reality, culminating in "Shayd," a virtual reality game where the user immerses himself in a three-dimensional alien universe, replete with exotic landscapes and alien creatures.

7. On information and belief, during the same time period, Luckey worked at the Mixed Reality Lab ("MxR"), which was part of the IMD. It was there that Luckey developed a prototype for what would become defendant Oculus' flagship product, the "Oculus Rift." The Oculus Rift is a head mounted display ("HMD") that when connected to a compatible computer enables the user to immerse himself in separately created virtual reality environments.

8. Griffo and Luckey met at MxR and Luckey expressed interest in working with Griffo on her thesis presentation for Shayd. For that presentation, Luckey helped Griffo pair the HMD and tracking system he developed at MxR with Shayd so that viewers of her presentation could fully experience its virtual reality capabilities. Luckey had no involvement with the creation, development or programming of Shayd or the software used to connect Shayd to his head mounted display prototype. His participation on the project was strictly limited to helping Griffo incorporate the HMD into her thesis presentation.

9. On information and belief, Griffo was the only IMD student working on both virtual reality gaming and head mounted display technology simultaneously. On further information and belief, at the times relevant to the lawsuit, Shayd was one of few, if not the only, virtual reality game compatible with the HMD technology and Luckey's prototype headset. Furthermore, on information and belief, at the time, Shayd was the most immersive, interactive and advanced HMD compatible virtual reality game in existence, such that it was uniquely situated to demonstrate the potential of what would become the Oculus Rift.

10. Shortly after Griffo graduated, Luckey sought her permission to include Shayd in the background of a video he was making as part of a Kickstarter campaign ("Video") to raise funding for the Oculus Rift. Griffo responded that she would have to see the Video first. Luckey never provided Griffo with an opportunity to review the Video nor responded in any way. Instead, three days later, on August 1, 2012, Luckey uploaded the Video to Kickstarter and raised over 2.4 million dollars.

11. The Video prominently displays Shayd as a working example of how the Oculus Rift functions and brings 3-D images to the user. No other virtual reality games except for Shayd are used in conjunction with the Oculus Rift in the Video. Palmer also declares himself the inventor of Rift right at the moment images of Shayd appear, in focus, directly behind him.

12. The Video makes no mention that Shayd was an independent project developed by Griffo. Thus, without contributing any work, labor, money or compensation to Griffo, Defendants passed images of Shayd off as their own creation to demonstrate the capabilities of Rift and got rich from it. Moreover, neither Luckey nor Oculus compensated Griffo for their use of Shayd at the time the Kickstarter Video was shown nor at any time through the date of this Second Amended Complaint.

13. It is highly unlikely that Luckey could have incorporated these Shayd images into the Video in the three days between the phone call and Video upload date even had Griffo consented to the use of Shayd in the Video (she did not). Thus, on information and belief, Luckey had already been illegally incorporating and displaying Shayd prior to seeking her consent and Defendants concealed and/or omitted this material fact from Griffo when they asked her to consent to the use of Shayd in the Video.

14. Furthermore, the video contained numerous testimonials and endorsements from prominent video game developers ("Developers"), who state that they have used the Oculus Rift and experienced its groundbreaking virtual reality technology. On information and belief, when these developers demoed the Oculus Rift, they did so by using it in conjunction with Griffo's Shayd virtual reality game and Defendants also concealed and/or omitted this material fact from Griffo when they asked her to consent to the use of Shayd in the Video.

15. Griffo has never consented to Defendants or anyone in the Video using or demoing Shayd. Moreover, she never provided Luckey or anyone else with access to the version of Shayd that appears in the Video as it is a more advanced version than the one that she used in her thesis presentation.

16. Griffo saw the Video for the first time in early August, 2012, days after it was first uploaded on Kickstarter. It was at this time that Griffo first discovered that Defendants had incorporated images of Shayd in the Video and that, on

information and belief, Defendants had enabled the various Developers that appeared in the Video to previously demo the Shayd game without Griffo's consent or knowledge.

17. In an interview with Richard Leadbetter, published on www.Eurogamer.net on August 4, 2012 (three days after the Kickstarter campaign commenced), Luckey stated "Shayd was actually shown in the Kickstarter video – experiencing that for the first time last year was what convinced me that I had to make this something people could see for themselves."

18. On or around March 25, 2014, less than two years after the Video aired, Facebook bought Oculus for over 2 billion dollars. On information and belief, the great success of Defendants' Kickstarter campaign and the accompanying press were critical factors that prompted Facebook to consummate the transaction.

19. Despite the fact that Defendants used Shayd to showcase the innovation the Rift HMD would bring to the gaming world and Luckey's admission to the press that Shayd not only inspired him to create the Oculus Rift but actually appeared in the Video, Defendants, to date, have never compensated Griffo in any way. Accordingly, Griffo brings this action seeking full and fair compensation for Defendants' unlawful use of her intellectual property.

**FIRST CLAIM**

Copyright Infringement

*(Against All Defendants)*

20. Griffo repeats and realleges each and every allegation set forth in paragraphs 1 through 19, above, as though fully set forth herein.

21. Griffo is the owner of copyrights in works that are fixed in tangible media of expression and that are the subject of valid and subsisting copyright registrations owned by Griffo. These include, without limitation, Griffo's Master's Thesis entitled "Shayd: The Pursuit of Magic, Immersion and Interactive Worlds," which is the subject of Registration TX 6-748-913 (the "Thesis"). The Thesis

ERVIN COHEN & JESSUP LLP

describes the unique story and gameplay of the Shayd game in considerable detail, including the backstory of the alien world and a written walkthrough of what a Shayd player would experience. Also included in the Thesis are detailed textual and visual depictions of the fantastical alien world and bizarre alien creatures that comprise the core of the Shayd game. The Shayd game is thus derivative of the Thesis.

22. Griffo is also the owner of copyrights in works that are fixed in tangible media of expression and that are the subject of valid and subsisting copyright applications owned by Griffo. These include, without limitation, the source code for the Shayd game (Case Number 1-3157643239), the visual display/alien landscape for the Shayd game (Case Number 1-3171775131) and the alien characters that appear in the Shayd game (Case Number 1-3171873101). The registered Thesis and the copyright applications described in this paragraph shall be referred to as the "Works."

23. Defendants have reproduced, created derivative works from, distributed, and otherwise infringed upon Griffo's Works (and works derivative of those Works) without Griffo's authorization. Defendants' acts violate Griffo's exclusive rights under the Copyright Act, including without limitation, Griffo's exclusive rights to reproduce her copyrighted Works, to create derivative works from her copyrighted Works, and to distribute her copyrighted Works as set forth in 17 U.S.C. §§ 106 and 501.

24. Defendants' infringement (and substantial contributions to the infringement) of Griffo's copyrighted Works is and has been knowingly made without Griffo's consent and for commercial purposes and the direct financial benefit of Defendants. Griffo is informed and believes, and on that basis alleges, that Defendants have failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Griffo's Works and have failed to do so in order to deliberately further their significant

ERVIN COHEN & JESSUP LLP

financial interest in the infringement of Griffo's Works.

25. In particular, on information and belief, Defendants encouraged and allowed the Developers who appeared in the Video to demo Shayd on the Oculus Rift by giving them with access to the game. Defendants did this in order to get the Developers to provide their invaluable testimonials in the Video as to the gaming potential of the Rift, knowing these testimonials would prove instrumental in raising money for the Defendants' Kickstarter campaign. On information and belief, these testimonials were key to Defendants raising over $2M and could not have been secured without the Developers demoing the Rift in conjunction with Shayd.

26. Furthermore, on information and belief, Defendants allowed third parties, including their engineers and employees, to use the Works in conjunction with the Rift as means to study and improve the Rift's functionality and compatibility with virtual reality software games that they and other third party developers would later create and sell. Accordingly, Defendants benefitted financially, as the infringement of the Works helped them create a more viable and more marketable product, as well as provide critical insight for them and other software developers into how to create virtual reality video games that would work with the Rift .

27. By virtue of Defendants' direct, contributory and vicarious infringement of the Works and derivative works thereof, as well as their inducement to get others to infringe, Griffo is entitled to recover her actual damages plus Defendants' profits and all other relief, including maximum statutory damages for willful infringement and attorneys' fees and costs, permitted under the Copyright Act.

/ / /

/ / /

/ / /

/ / /

ERVIN COHEN & JESSUP LLP

**SECOND CLAIM**

Fraudulent Concealment/Omission

*(Against All Defendants)*

28. Griffo repeats and realleges each and every allegation set forth in paragraphs 1 through 27, above, as though fully set forth herein.

29. On or about July 29, 2012, Defendants reached out to Griffo to ask if they could use Shayd in the Video. Specifically, Luckey discussed the issue over the phone with Griffo. (See Paragraph 10 of this Second Amended Complaint).

30. On information and belief, at the time Defendants asked Griffo's permission, they had already prepared the Video and included images of Shayd therein, and were planning on displaying the images of Shayd in the Video regardless of whether Griffo gave her consent. Furthermore, on information and belief, Defendants had also already provided various Developers with access to Shayd to demo the Rift and thereby secure their testimonials to include in the Video. Defendants fraudulently concealed this information from Griffo, who did not discover it until she saw the Video for herself several days later. (See Paragraphs 11-14 and 24-26 of this Second Amended Complaint).

31. Defendants' concealment that they had already incorporated Shayd elements into the Video and provided video game developers, who would be providing testimonials, access to the Shayd game were material omissions. Had Defendants informed Griffo, who was ignorant of the falsity of their statements and reasonably, foreseeably and justifiably relied on the truth of Defendants' representations, that they had already made a Video featuring images of Shayd, planned to upload the Video on Kickstarter regardless of whether Griffo gave her consent and had already allowed numerous people, including the Developers who provided testimonials in the Video, to demo Shayd, she would have taken steps to ensure the Video never ran on Kickstarter and/or to take it down immediately. These include, but are not limited to, seeking a court injunction to prevent the Video

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

from being uploaded, preemptively notifying Kickstarter that the Video contained infringing material, sending a Digital Millennium Copyright Act Notice to Kickstarter as soon as the Video was uploaded, contacting the Developers who appeared in the Video to notify them of the infringement and all other applicable legal actions.

32. As a result of Defendants' fraudulent concealment and material omissions, Griffo has suffered real and actual damages in an amount to be proven at trial.

33. Defendants' fraudulent actions as described herein in were willfully fraudulent and done with total disregard for Griffo's rights. Accordingly, Griffo is entitled to exemplary or punitive damages.

**DEMAND FOR JURY TRIAL**

Griffo hereby demands a trial by a jury on all issues so triable by right.

**PRAYER FOR RELIEF**

By reason of the acts and circumstances alleged above, Griffo seeks relief from this Court as follows:

1. That Griffo be awarded, and Defendants be ordered to disgorge, all payments, revenue, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including without limitation of all revenues and profits attributable to Defendants' infringements of Griffo's copyrights under 17 U.S.C. §504;

2. That Griffo be awarded compensatory damages for the fraudulent concealment damages in an amount to be proven at trial;

3. That, as a result of their fraudulent conduct, Defendants be ordered to pay exemplary damages in a sum sufficient to punish and deter them and others from similar wrongdoing;

4. That Defendants pay to Griffo the full cost of this action and her attorneys' fees

5. Any other and further relief as this Court may deem just and proper.

DATED: February 29, 2016

ERVIN COHEN & JESSUP LLP
Randall S. Leff
Russell M. Selmont

By: /s/ Russell M. Selmont
Russell M. Selmont
Attorneys for PLAINTIFF JULIANA GRIFFO

ERVIN COHEN & JESSUP LLP

## CERTIFICATE OF SERVICE

**CENTRAL DISTRICT OF CALIFORNIA**

*Juliana Griffo v. Oculus VR, Inc., et al.*

*Case No.: 8:15-cv-01228-DFM*

The undersigned certifies that on February 29, 2016, the following documents and all related attachments ("Documents") were filed with the Court using the CM/ECF system.

**SECOND AMENDED COMPLAINT**

Pursuant to L.R. 5-3.2, all parties to the above case and/or each attorneys of record herein who are registered users are being served with a copy of these Documents via the Court's CM/ECF system. Any other parties and/or attorneys of record who are not registered users from the following list are being served by first class mail.

By: /s/ Russell M. Selmont
Russell M. Selmont

ERVIN COHEN & JESSUP LLP