KEKER, VAN NEST & PETERS LLP
DAVID SILBERT - #173128
dsilbert@keker.com
MICHAEL S. KWUN - #198945
mkwun@keker.com
LEAH PRANSKY - #302246
lpransky@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants OCULUS VR, INC., and PALMER LUCKEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION (SANTA ANA)

| | |
|---|---|
| JULIANA GRIFFO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OCULUS VR, INC., and PALMER LUCKEY,<br><br>　　　　Defendants. | Case No. 8:15-cv-01228 DOC (JCGx)<br><br>**ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge:　Hon. Jay C. Gandhi<br><br>Date Filed:　July 31, 2015 Trial<br><br>Date:　None Set |

Unless otherwise agreed in a writing signed by the parties' counsel of record in this action, this Stipulated Order Re: Discovery of Electronically Stored Information ("Stipulation") shall govern the parties' discovery related to electronically stored information ("ESI")—as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure—as well as the form of production of hard copy and source code documents. The discovery activities covered by this Stipulation are to be conducted as follows:

I. **GENERAL PROVISIONS**

1. This Stipulation supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2. The Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information consistent with Federal Rule of Civil Procedure 26(b)(1). This includes applying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter and time periods for discovery, and other efforts to limit and guide preservation and discovery. Pursuant to Rule of 26 of the Federal Rules of Civil Procedure, costs will be shifted for disproportionate ESI production requests. In addition,

    a. A party's nonresponsive or dilatory discovery tactics will be considered in cost-shifting determinations.

    b. A party's good faith compliance with this Stipulation and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

II. **PRODUCTION FORMATS**

1. The parties agree to produce documents in the formats described in the Appendix to this Stipulation. If particular documents warrant a different

format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

2. The parties have agreed that all ESI produced in this action will be exchanged electronically via secure FTP or on CD, DVD, flash drive or hard drive. To the extent the documents are ordinarily maintained by the producing party in a form that is electronically searchable, they must be produced in a form that is electronically searchable.

3. Nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the requesting party's request. Further, nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is – in good faith - deemed not responsive to the requesting party's request for production by the producing party.

## III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

1. Email production requests shall identify the custodian, search terms, and time frame relevant to the request.

2. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

3. **TIMING.** The collection and production of ESI shall begin after the parties have exchanged initial disclosures and agreed to custodians, search terms, and relevant time periods.

4. **CUSTODIANS.** The parties shall meet and confer to reach agreement on a reasonable list of custodians and search terms for purposes of collection, review, and production of ESI.

1166214

5. **SEARCH TERMS.** Search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/#") is encouraged to limit the production and lack thereof shall be considered when determining whether to shift costs for disproportionate discovery. The parties shall then meet and confer to reach agreement on the search terms for electronic searches of the files from the previously agreed to custodians.

6. **CULLING\FILTERING.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NRSL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C++ Program File (c) , C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and

1166214

Program Installers.

7. **DEDUPLICATION.** Each party is required to produce only a single copy of a responsive document and each party may de-duplicate ESI on a global level (across all custodians) based on the MD5 or SHA1 Hash values, or some other later agreed to de-duplication method such as full text de-duplication. For generating either the MD5 or SHA1 hash values for email, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation. The custodians of deduplicated copies of documents should be included in the database load file, either in the CUSTODIAN field or, alternatively, in a field for duplicative or other custodians (e.g. DUPE CUSTODIAN).

8. **STRUCTURED DATA.** The parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information the reports should contain. As a general rule, data that is stored in a database, whether maintained internally by the party or through a third party provider, shall be produced as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

9. **BACKUP DATA.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

IV. **INADVERTENT PRODUCTION OF PRIVILEGED INFORMATION.**

Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged, work-product-protected, or common interest-protected documents in this case as part of a mass production is not itself a waiver

1166214

in this case or any other federal or state proceeding. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned immediately if such information appears on its face to have been inadvertently produced or if requested. If the receiving party seeks to challenge the privileged nature of the document(s), the receiving party still must return the document(s) to the producing party but may then seek re-production of the document(s).

If a party who received documents or information over which a privilege is asserted has disclosed such documents or information to any person or in any circumstance, the party must immediately: (a) notify, in writing, the producing party of the disclosure; (b) use best efforts to retrieve all copies of the documents or information over which the privilege is asserted; and (c) notify, in writing, the producing party regarding whether all copies have been retrieved.

The parties further agree that no motion to compel or other argument for waiver of privilege will be raised based upon the production or disclosure of privileged information, inadvertent or otherwise.

The parties will agree to furnish logs which comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements. Documents may be identified on a privilege log by category, rather than individually if appropriate.

Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery. If the log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

Communications involving inside or outside counsel for the parties related to this case, and materials withheld from discovery on grounds of privilege, work product or similar doctrines, that were created on or after July 31, 2015, need not be

1166214

included on a privilege log. These exceptions are made without prejudice to any party's ability and right to assert that such materials are discoverable and not privileged or protected. These exceptions also do not apply to the redacted documents and their respective redaction log(s).

Nothing herein shall prevent the receiving party from challenging the propriety of the claim of attorney client privilege, work product protections or other applicable privilege or immunity designation by submitting a written challenge to the court.

## V. COMMUNICATIONS WITH EXPERTS.

Drafts of reports, declarations, or affidavits prepared by an expert who may give testimony in this case ("Testifying Expert"), or his or her assistants, as part of the Testifying Expert's investigation and/or in developing the Testifying Expert's opinions and reports shall not be subject to discovery. This limitation applies regardless of whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes, writing, or markings created by in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert.

Notes and other documents prepared by a Testifying Expert, or his or her assistants, as part of the investigation and/or in preparing an expert report shall not be subject to discovery.

Discovery of materials provided to Testifying Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Testifying Expert in formulating his/her final report(s), trial or deposition testimony or any opinion.

No discovery may be taken from any consulting expert that will not provide testimony and/or an expert opinion in this case ("Consulting Expert"), including with respect to drafts of reports, if any, prepared by an expert except to the extent that the Consulting Expert has provided information, opinions, or other materials

that a Testifying Expert relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned Investigations. Where a Consulting Expert has provided materials or information that a Testifying Expert has relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion, discovery (other than depositions) may be taken of the Consulting Expert regarding those specific materials and information. The limitations herein do not preclude a party from discovery of prior opinions or testimony of an expert in matters other than the present case, to the extent the prior opinions or testimony are related to and/or may be inconsistent with the opinions given in the above-captioned Investigations.

Written or oral communications between any Testifying Expert or Consulting Expert, his or her assistants, and/or in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert or Consulting Expert, are not subject to discovery unless the conversations or communications are relied upon by a Testifying Expert in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned Investigations.

Notwithstanding the foregoing, experts reports must disclose all documents and things considered or relied upon by the expert with reference to this case, including definitions and possible prior art, and including any documents or things provided by counsel or by the expert's staff, although communications forwarding or otherwise concerning such source documents or things are not discoverable.

## VI. MODIFICATION

This Stipulation is entered into without prejudice to the right of any party to apply to the Court at any time for modification of this Stipulation. Furthermore, without application to this Court, the parties may agree in a signed writing to modify the terms of this Stipulation.

8
STIPULATED ESI ORDER Case No.
8:15-cv-01228 DOC (JCGx)

1166214

| | | |
|---|---|---|
| Dated: August 21, 2017 | | KEKER, VAN NEST & PETERS LLP |
| | By: | */s/ Michael S. Kwun* |
| | | DAVID SILBERT |
| | | MICHAEL S. KWUN |
| | | LEAH PRANSKY |
| | | Attorneys for Defendants OCULUS VR, INC., and PALMER LUCKEY |
| Dated: August 21, 2017 | | ERVIN COHEN & JESSUP LLP |
| | By: | */s/ Russell M. Selmont* |
| | | Randall S. Leff |
| | | Russell M. Selmont |
| | | Attorneys for Plaintiff JULIANA GRIFFO |

**Appendix 1: ESI Metadata and Coding Fields**

A.  **Imagebase Load File (.opt)** shall be in Concordance Image/Opticon (.opt) format and include a record for each page with the following fields:
ALIAS, VOLUME, PATH, DOC_BREAK, FOLDER_BREAK, BOX_BREAK, PAGES

B.  **Metadata Load File (.dat)** shall include a record for each document and use Concordance default delimiters, as follow:

    Field Delimiter = (ASCII 020)
    Text Delimiter = þ (ASCII 254)
    Line Delimiter = ® (ASCII 174)

C.  The following fields will appear in the metadata load file in the order displayed below:

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| DATERCVD | Date on which email message was received (MM/DD/YYYY) |
| TIMERCVD | Time at which email message was received |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| CONVERSATIONINDEX | The conversation index extracted from the produced email message where available |
| AUTHOR | Any value populated in the Author field of the document properties |
| LASTAUTHOR (Edoc only) | Last author or editor of document, from document properties |

1166214

| Field Name | Field Description |
|---|---|
| FILENAME(Edoc only) | Filename of an electronic document |
| FILEEXT | File extension |
| FILEPATH | Path to file or message |
| FILESIZE | The original file size of the produced document |
| DATELASTMOD (Edoc only) | Date an electronic document was last modified (format: MM/DD/YYYY) |
| TIMELASTMOD | Time at which document was last modified |
| DATECREATED (Edoc only) | Date the document was created (format: MM/DD/YYYY) |
| TIMECREATED | Time at which document was created |
| TITLE | Title of document, from document properties |
| CONFIDENTIALITY | All Confidentiality designations |
| PAGE COUNT | The number of pages of the produced document |
| MD5HASH | A calculated value unique to each identical file. The producing party may substitute the SHA1 Hash value, but will name the field accordingly to indicate such substitution |
| TEXTLINK | Path to the associated multi-page/document level text file for each produced document |
| NATIVELINK | Path to the associated native file where applicable |
| PRODVOLUME | The production volume associated with the produced file |

1166214

## **Appendix 2: Production Format of Hard Copy Documents**

A. The parties agree to produce documents in TIFF file formats. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

B. **IMAGE FORMAT.** Documents that exist in hard copy format only shall be scanned and produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi). Color documents may be produced in .JPG format in lieu of TIFF images; where so produced, color JPG files should also be provided with a resolution of at least 300 dpi. Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations. Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. TIFF or JPG files shall show all text and images that would be visible to a user of the hard copy documents.

C. **DATABASE LOAD FILES/CROSS-REFERENCE FILES**. A production shall be provided with (a) an ASCII delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above. In addition:

　　1.　　The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

　　2.　　The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it

12
STIPULATED ESI ORDER Case No.
8:15-cv-01228 DOC (JCGx)

1166214

comprises. Each TIFF or JPG in a production must be referenced in the corresponding image load file.

    3. In addition to the metadata fields identified for production in Section E below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

D. **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. The filename for the multi-page text file described above in Section E shall correspond to the beginning production number of the document. If a document is redacted, the text files shall not contain the redacted portions of the documents, but should contain the remaining unredacted text.

E. **METADATA.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, and (d) CONFIDENTIALITY.

F. **UNITIZING OF DOCUMENTS.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps".

1166214

## **Appendix 3  Production Format of Electronic Documents**

The format of productions of ESI shall comply with the below listed requirements:

**A. IMAGE FORMAT.** All documents covered by Sec. III of this stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi), unless so excepted by Section D below.  Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or jpg files shall show all text and images that would be visible to a user of the ESI documents.

**B. DATABASE LOAD FILES/CROSS-REFERENCE FILES.** A production should be provided with (a) an ASCII delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.  In addition:

1. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.
2. The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF in a production must be referenced in the corresponding image load file.
3. In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

**C. TEXT FILES.** The multi-page text files described above in Section B.3.

shall include text extracted from ESI with extractable text. For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the producing party shall use optical character recognition software (OCR) to generate text for the document. OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings or is otherwise not easily convertible into a searchable format. The filename for the multi-page text file shall correspond to the beginning production number of the document.

**D. NATIVE FILES.** Any file produced in native format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Appendix 1. Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format. Only the files discussed below may be produced in native format unless both parties agree otherwise in writing.

1. **SPREADSHEETS.** Except for the placeholder referenced in III(11)(d) above, TIFF or JPG images of spreadsheets need not be produced unless redacted. Where produced in TIFF or JPG format, the parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF or JPG images are formatted so as to be readable.

2. **PRESENTATIONS.** The parties shall take reasonable efforts to process presentations (e.g., PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of jpg image.

15
STIPULATED ESI ORDER Case No.
8:15-cv-01228 DOC (JCGx)

3. **VIDEO AND AUDIO FILES.** Audio and Video files will be produced in native format, with TIFF placeholders and available metadata provided in database load files.

4. **EXCEPTIONS.** For any processing exception (i.e. a file that cannot be processed by standard ESI processing tools) that is being produced due to document family relationships, the producing party shall provide a placeholder image that includes the file name of the document, a Bates number and a confidentiality designation, in addition to associated metadata.

5. **REQUEST(S) FOR ADDITIONAL NATIVE FILES.** If good cause exists to request production of specified files, other than those specifically set forth above, in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder. Any dispute regarding the production of documents in native format shall be resolved by the assigned magistrate judge, as set forth in the Standing Order for the Southern District of California.

**E. METADATA FIELDS AND PROCESSING.** Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; (e) CUSTODIAN; and (f) CONFIDENTIALITY, which should be populated by the party or the party's

1166214

vendor.

**F. FORMAT & FOLDER STRUCTURE.** The production data may be exchanged between counsel in encrypted form (*e.g.* TrueCrypt, password-protected Zip, or RAR files). Productions of 10GB or less may be made via FTP or secure server; larger productions should be made on hard media (e.g., hard drives). Each production shall be provided in the following folder structure:

    Top-level folder: This folder will indicate the production volume;
    a. Sub-folders:
        1. IMAGES: This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them. No other type of file should reside in the "IMAGES" folder. Sub-folders shall not contain more than 1000 images per folder.
        2. TEXT: This folder will contain the full text files in UNICODE, UTF8 or ANSI format in a separate folder labeled TEXT. Sub-folders shall not contain more than 1000 text files per folder.
        3. DATA: This folder will contain load files compatible with Concordance version 8 or above and Opticon.
        4. NATIVES: This folder will contain native files that the parties agree to produce during the course of this litigation. Sub-folders shall not contain more than 1000 native files per folder.

IT IS SO ORDERED.

Dated: August 25, 2017



Hon. _____ . Gandhi
United States Magistrate Judge

# ATTESTATION

Pursuant to Civil Local Rule 5-4.3.4, I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 21, 2017  /s/ Leah Pransky
LEAH PRANSKY